**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHOSEN FIGURE LLC, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN FRAZIER PRODUCTIONS, INC.,<br><br>Defendant. | Case No.: 2:22-cv-06518-MEMF(MAAx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [ECF NO. 13] AND GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NO. 14]** |

Before the Court is the Motion to Dismiss and Request for Judicial Notice filed by Defendant Kevin Frazier Productions Inc. ECF Nos. 13, 14.

For the reasons stated herein, the Motion to Dismiss is DENIED. The Court GRANTS the Request for Judicial Notice.

/ / /

/ / /

1

**BACKGROUND**

I. **Factual Background[1]**

This copyright case involves the republication of a copyrighted photograph of two major celebrities. Plaintiff Chosen Figure, LLC ("Chosen Figure") is a professional photographer by trade and licenses its works to online and print publications. Compl. ¶ 10.  Defendant Kevin Frazier Productions, Inc. ("KFP") owns and operates the Black-focused entertainment news website "www.hiphollywood.com" ("Hip Hollywood"). *Id.* ¶ 3. Hip Hollywood is a popular and lucrative commercial website containing paid advertisements. *Id.* ¶¶ 14–15.

On or about December 2, 2020, Chosen Figure captured a photograph of recording artists Rihanna and A$AP Rocky standing outside in winter coats (the "Photograph"). *Id.* ¶ 16. *See also* Ex. 1, ECF No. 1-1. Chosen Figure successfully registered the Photograph with the U.S. Copyright Office on January 15, 2021. *Id.* ¶¶ 17–18.

Soon after, American rapper and hip-hop recording artist Lil Uzi Vert[2] reproduced the Photograph on his Instagram Stories, superimposing the text "Cant Be True" in the corner of the image (the "Story").[3]

On December 3, 2020, Hip Hollywood published an article titled "Lil Uzi Vert unfollows Crush Rihanna Because She's Dating A$AP Rocky," chronicling Lil Uzi Vert's reaction to being seen in public with A$AP Rocky (the "Article"). ECF No. 14-2. The Article included a screenshot of the Story. ECF No. 13-1 at 1.

On May 10, 2022, Chosen Figure discovered KFP's use of its Photograph in the Article. At no point had Chosen Figure licensed the photo to KFP.

---

[1] Unless otherwise indicated, the following factual background is derived from the Complaint, ECF No. 1-1 ("Compl."), and the Motion.

[2] Lil Uzi Vert is an American rapper and hip-hop recording artist. Andrew R. Chow & Cady Lang, "How Lil Uzi Vert Became an Unlikely Superstar of the Streaming Era," https://time.com/5804342/lil-uzi-vert-eternal-atake/ (last accessed Mar. 17, 2023).

[3] "Instagram is a social media platform that enables users . . . to share photographs and videos." *Hunley v. Instagram, LLC*, Case No. 21-CV-03778-CRB, 2021 WL 4243385, at *1 (N.D. Cal. Sept. 17, 2021). Instagram Stories allow users to "share photos and videos that disappear from [their] profile, Feed and messages after 24 hours, unless [the images are] add[ed] to [one's] profile as story highlights." Help Center, Instagram, https://help.instagram.com/1660923094227526 (last accessed Mar. 17, 2023).

**II.**     **Procedural History**

On September 13, 2022, Chosen Figure filed this action against KFP asserting direct Copyright Infringement pursuant to 17 U.S.C. § 501 *et seq*. On November 28, 2022, KFP filed the instant Motion to Dismiss. ECF No. 13 ("Motion" or "Mot.") Filed concurrently is KFP's Request for Judicial Notice. ECF No. 14 ("Request" or "RJN"). The Motion was fully briefed as of March 9, 2023. ECF Nos. 18 ("Opposition" or "Opp'n"); 19 ("Reply"). On March 20, 2023, the Court found these matters appropriate for resolution without oral argument and vacated the hearing set for March 23, 2023. ECF No. 21, *see* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## REQUEST FOR JUDICIAL NOTICE

**I.**     **Applicable Law**

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Although a district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss, the Court may take judicial notice of matters in the public record, without converting a motion to dismiss into one for summary judgment. *Id.* at 689–90.

Hip Hollywood submits—and asks the Court to take judicial notice of—two (2) exhibits in support of its Motion to Dismiss:

1.  Search results page from the United States Copyright Office's public catalog, detailing Chosen Figure's ownership of the Photograph, attached as Exhibit 1 to the Declaration of Aleeza L. Marashlian ("Marashlian Decl." or "Marashlian Declaration");

2.  An article published by Hip Hollywood on December 3, 2020, titled *Lil Uzi Vert Unfollows Crush Rihanna Because She's Dating A$AP Rocky*, available at https://www.hiphollywood.com/2020/12/lil-uzivert-unfollows-crush-rihanna-because-

1    shes-dating-aap-rocky/, a copy of which is attached as Exhibit 2 to the Marashlian

2    Declaration (the "Article").

3    The exhibits at issue fall into two different categories: Exhibit 1 is a public record and

4    Exhibit 2 is media publication. As matters of public record, registrations with the copyright and

5    trademark office are considered to be judicial records proper for judicial notice; therefore, the Court

6    takes judicial notice of Exhibit 1. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746

7    n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public

8    record."); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *Au-Tomotive Gold, Inc. v.

9    Volkswagen of Am., Inc.*, 457 F.3d 1062, 1064 n.2 (9th Cir. 2006) (taking notice of USPTO

10   trademark registrations).

11   Exhibit 2 is a screenshot of a webpage, displaying the layout and content of the Article. The

12   Court may take judicial notice of this exhibit to "indicate what was in the public realm at the time,

13   [but] *not whether the contents* of [the] article[] [was] in fact true." *Von Saher v. Norton Simon

14   Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

15   The Court, therefore, GRANTS KFP's unopposed Request to take judicial notice of Exhibits

16   1–2.

17                              **MOTION TO DISMISS**

18   **I.    Applicable Law**

19   Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss

20   for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose

21   of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a

22   complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district

23   court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts

24   to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156,

25   1159 (9th Cir. 2016).

26   "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to

27   'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

28   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals of the elements of a cause of action." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## II.  Discussion

### A.  KFP's use of the Photograph does not constitute fair use.

KFP moves to dismiss the copyright infringement claim on the grounds that KFP's use of the Photograph constitutes fair use under the Copyright Act. *See* Mot. at 4. KFP argues that Chosen Figure—as a matter of law—is unable to demonstrate that KFP infringed its work because the Article in which the Photograph is embedded "is *about* Lil Uzi Vert's reaction to this news, stating that the rapper 'shared his shock and disbelief on social media' by making the post with his superimposed comment and unfollowing Rihanna on Instagram." Mot. at 1 (emphasis in original).

"The Copyright Act, 17 U.S.C. § 106, protects the owner of a copyright by granting him or her exclusive rights to reproduce, distribute, and publicly display copies of the work." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003). "A prima facie case of copyright infringement by reproduction is established by *showing ownership* by the plaintiff and *copying* by the defendant." *Id.* (emphasis added).

1    The "fair use" exception "permits courts to avoid rigid application of the copyright statute

2    when, on occasion, it would stifle the very creativity which that law is designed to foster." *Kelly v.*

3    *Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2003) (quoting *Dr. Seuss Enters., L.P. v. Penguin*

4    *Books USA, Inc.*, 109 F.3d 1394, 1399 (9th Cir. 1997)). "The fair use doctrine confers a privilege on

5    people other than the copyright owner to use the copyrighted material in a reasonable manner

6    without his consent, notwithstanding the monopoly granted to the owner." *Hustler Magazine*, 796

7    F.2d at 1151 (internal quotation marks omitted).

8

9    Courts consider the following four non-exclusive factors when determining whether a party's

10   activity constitutes a fair use: (1) "the purpose and character of the use, including whether such use

11   is of a commercial nature or is for nonprofit educational purposes;" (2) "the nature of the

12   copyrighted work;" (3) "the amount and substantiality of the portion used in relation to the

13   copyrighted work as a whole;" and (4) "the effect of the use upon the potential market for or value of

14   the copyrighted work." 17 U.S.C. § 107. This analysis is "a mixed question of law and fact" and all

15   four factors need not be met for a defendant to prove fair use. *Kelly*, 336 F.3d at 817. Instead, courts

16   undertake a balancing test and weigh the factors "in light of the objectives of copyright law." *Id.* at

17   818.

18

19   Here, the parties do not dispute that Chosen Figure has established a prima facie case of

20   copyright infringement. Mot. at 1–2, 4–5, 7; Compl. ¶¶ 16–18. Instead, KFP contends that its use of

21   the Photograph falls under the fair use exception. Because fair use is an affirmative defense, it is

22   KFP's burden to prove that its use of the Photograph meets the definition of fair use. *Monge v. Maya*

23   *Mags., Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("As with all affirmative defenses, . . . the

24   defendant bears the burden of proof."). With this in mind, the Court addresses all four criteria in

25   turn. The parties do not point the Court to any other fair use factors besides the factors enumerated

26

27   above, so the Court's analysis will focus on these.

28   / / /

i. Purpose and Character of the Use

The first factor in a fair use analysis requires the Court to consider "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). There are three subfactors under this first prong: (1) news reporting, (2) commercial nature of the use, and (3) transformative use. *See Monge*, 688 F.3d at 1173. The Court evaluates the commercial nature and transformation of the use.

1. *The Photograph was used in news reporting.*

Chosen Figure essentially concedes that the Photograph was used in news reporting. Opp'n at 11-12 ("While at the very fringe of 'news reporting,' Defendant did little, if anything to develop any story beyond displaying the photograph and describing its contents."). It has not pointed to any authority suggesting that "gossip news" should be treated any differently than any other form of news or that the degree of story development should affect the weighing of this subfactor.

2. *The Photograph was used for commercial purposes.*

This subfactor requires that the Court consider whether the use of the new work is commercial in nature. *See Kelly*, 336 F.3d at 818. A commercial or profit-making purpose weighs against a finding of fair use. *Monge*, 688 F.3d at 1176. However, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but *whether the user stands to profit from exploitation of the copyrighted material without paying the customary price*." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (emphasis added). There is no dispute that KFP operates Hip Hollywood for commercial purposes. Indeed, KFP makes no pretense that Hip Hollywood is a "Black-focused entertainment news website." Mot. at 1; *see also* Opp'n at 6 ("[T]he very fact that Defendant chose Plaintiff's Photograph for its 'entertainment news website' shows that the Photograph has commercial value."). As a news website, Hip Hollywood is a popular commercial enterprise that generates revenue by displaying paid advertisements on its website. Compl. at 3.

3. *The Photograph was not transformed.*

The most important inquiry under this factor is whether and to what extent the new work is "transformative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). A transformative use is one that "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message" to the original work, transforming the original work into a "new creation." *Id.* at 577; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007). As such, the Court focuses the bulk of its analysis here.

KFP argues the Article transformed the Photograph from its original purpose—an image depicting two celebrities—into an article "reporting news" of "Lil Uzi Vert's Instagram post reacting to and commenting on the photograph and the status of Lil Uzi Vert's romantic life more generally." Mot. at 8. Here, the screenshot of the Photograph is included in the Article, which not only describes the Photograph, but also the Lil Uzi Vert's reaction to seeing the Photograph and his general personal life. *See* Article (describing Lil Uzi Vert as "pretty devastated by news Rihanna is dating A$AP Rocky" and summarizing Lil Uzi Vert's interactions with the Photograph as him having written "'Cant [sic] Be True' . . . on his Instagram Stories of one photo of the couple"); Mot. at 8 ("[T]he purpose of Hip Hollywood's use was to report on Lil Uzi Vert's Instagram post reacting to and commenting on the photograph and the status of Lil Uzi Vert's romantic life more generally.") In short, KFP argues that by providing the broader context of Lil Uzi Vert's romantic life, the Article sufficiently transformed the purpose of the Photograph.

However, an infringer's separate purpose, by itself, does not create "new aesthetics that would alter the original work's expression, meaning or message." *Monge*, 688 F.3d at 1176. "A 'difference in purpose is not quite the same thing as transformation, and *Campbell* instructs that transformativeness is the critical inquiry under this factor.'" *Id.* (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998)). As in *Monge*, KFP "did not transform the photos into a new work . . . or incorporate the photos as part of a broader work." *Monge*, 688 F.3d at 1176. KFP

8

"left the inherent character of the images unchanged."[4] *Id.* Just as in *Monge*, KFP's use was essentially "wholesale copying sprinkled with written commentary." *Id.*

KFP directs the Court to a case from the Southern District of New York in support of this contention: *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 574 (S.D.N.Y. 2020). While not binding, the Court finds this case instructive but distinguishable.[5] *Walsh* is factually distinct for two reasons: (1) the use of the photograph in *Walsh* was incidental to the defendant's article; and (2) because the defendant merely "embedded" the relevant post, the defendant did not infringe on the plaintiff's right to *display* copies.

In *Walsh*, the plaintiff, a photographer, took a photo of rapper and celebrity Cardi B at a fashion show for luxury fashion house Tom Ford. *Walsh*, 464 F. Supp. 3d at 575–76. The plaintiff subsequently obtained a copyright for the photograph. *Id.* Tom Ford later posted the photograph to its Instagram to announce its lipstick collaboration with Cardi B. *Id.* Cardi B then posted a screenshot of the announcement to her own Instagram account and thanked Tom Ford. *Id.* News of the collaboration led to a heated debate but, despite the backlash, the collaboration was a success and the lipstick sold out. In response to this news, Cardi B subsequently posted a composite image containing plaintiff's photograph and an image of the lipstick with the caption "Sorry:/ . . . ." *Id.* The

---

[4] KFP argues there are two layers of transformation present: Lil Uzi Vert's superimposed text, "Can't Be True," and KFP's adoption of Lil Uzi Vert's photo in the Article. Applying the Ninth Circuit standard set forth in *Campbell* and *Perfect 10*, Lil Uzi Vert's minimal addition of the words "Can't Be True" is insufficiently transformative. The addition does not transform the Photograph into a new work and does not serve a different function than the original work. *Perfect 10*, 508 F.3d at 1165 (use of thumbnail images in search engine served a different function).

[5] KFP cites to a number of district court cases to support its arguments. The Court reminds the parties that trial court decisions are not binding on this Court. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001) ("[T]he binding authority principle applies only to appellate decisions, and not to trial court decisions . . . .").

defendant magazine embedded the Instagram posts in its article to illustrate the progression of the controversy and the surrounding conversation that followed.[6] *Id.* at 582–83.

The *Walsh* court held that the defendant sufficiently transformed the photograph because it was used for an entirely different purpose than originally intended. *Id.* at 581. The article's focus was the launch of the collaboration, the ensuing social media controversy, and Cardi B's post. The defendant "did not publish the photograph simply to present its content, as a generic image of Cardi B to accompany an article about Cardi B, or as an image of her at Tom Ford's fashion show alongside an article about the fashion show." *Id.* at 582. The court further noted the article "does not even mention the photograph itself, much less report on it specifically." *Id*. The defendant's decision to embed the posts further bolstered its position that the *post* rather than the photograph was the subject of their article. *Walsh*, 464 F.Supp.3d at 583–84 ("Defendant embedded the entire Instagram Post, still bearing the rest of the elements of the image that Cardi B had posted . . . [the header, caption and various Instagram standard links], making clear that the subject of the image was the Post, not the Photograph."). Therefore, the photograph, though contained in the social media posts, was merely incidental to the defendant's purpose.

*Walsh* is therefore factually distinct because the defendant did not infringe on the plaintiff's exclusive right of public display. There, the defendant embedded the Instagram posts instead of directly hosting a "fixed" copy of the photograph on its website. [7] A photographic image is fixed in a

---

[6] An "embedded" image [or post] is one that:

> hyperlink[s] . . . to [a] third-party website. To embed an image, [a] coder or web designer . . . add[s] an 'embed code' to the HTML instructions; this code directs the browser to the third-party server to retrieve the image." Thus, the image appears on the new page, but links to and remains hosted on the third-party server or website.

*Walsh*, 464 F.Supp.3d at 577 n.4 (internal citations and quotation marks omitted).

[7] "'Copies' are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101.

tangible medium of expression "when embodied . . . in a computer's server. *Perfect 10*, 508 F.3d at 1160. Embedded content remains stored on the third-party servers, such as Instagram, and does not create an infringing copy. *Perfect 10*, 508 F.3d at 1160. As such, there was no prima facie showing of copyright infringement. This weighed in defendant's favor since fair use is an affirmative defense to copyright infringement.

In contrast, KFP admittedly "used a screenshot of Lil Uzi Vert's Instagram Stories post featuring the photograph at issue" in the Article. Mot. at 5. By publishing the Story as part of its Article, KFP "fixed" the Photograph in a "tangible means of expression" and infringed upon Chosen Figure's exclusive right to public display. 17 U.S.C. § 106(5).

Further, the Article is entirely based on the existence of the Photograph and the news it purports to share about the alleged relationship between two celebrities. KFP's argument that Lil Uzi Vert's *post* is the subject of the Article—rather than the persons in the Photograph and their alleged relationship—is belied by the following: (1) the first sentence of the Article discusses Rihanna and A$AP Rocky's *relationship* and points readers to other related articles on that topic; (2) the Article discusses the Photograph itself, not just Lil Uzi Vert's commentary; and (3) even Lil Uzi Vert's alleged reaction indisputably concerns the persons in the Photograph and their alleged relationship. The Article, Lil Uzi Vert's Post, and the Photograph itself all concern the same topic—that Rihanna and A$AP Rocky were seen together. Without the Photograph, there would be no Article, and this Court declines to treat these topics as wholly distinct.

With this context in mind, the Court finds that KFP, by and through the Article, has not created a new work altering the original work's meaning or message—namely, that Rihanna and A$AP Rocky were seen together. *Monge*, 688 F.3d at 1176. Accordingly, this is a "typical 'non-transformative' case," where "the use is one which makes no alteration to the *expressive content or message* of the original work." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (emphasis in original).

1    For these reasons, the Court finds KFP's use was insufficiently transformative, and this

2    factor weighs against a finding of fair use.

3                  ii.   Nature of the Copyrighted Work

4    The second factor in a fair use analysis requires the Court to consider the "nature of the

5    copyrighted work." 17 U.S.C. § 107(2). This factor considers whether a work is published or

6    unpublished, and how creative a work is. Whether a work is published or unpublished is a critical

7    element of its nature, and "[p]ublished works are more likely to qualify as fair use because the first

8    appearance of the artist's expression has already occurred." *Kelly*, 336 F.3d at 820. Works that are

9    creative in nature, such as photographs and novels, "are closer to the core of intended copyright

10   protection than are more fact-based works." *Id.* The Supreme Court has long held that photographs

11   warrant copyright protection because of the various creative elements employed by the

12   photographer, such as the lighting, backdrop, and posing of the subject. *Burrow-Giles Lithographic*

13   *Co. v. Sarony*, 111 U.S. 53, 61 (1884). "Even 'point-and-shoot' photographs that are not 'highly

14   artistic' can merit copyright protection." *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1225 (9th Cir.

15   2022), quoting *Monge*, 688 F. 3d at 1177.

16   Here, KFP argues the nature of Chosen Figure's "relatively neutral" and previously

17   published original work falls further from the core of intended copyright protection, meaning that the

18   second factor favors KFP. Mot. at 10. While the Court agrees that paparazzi photos may not be

19   highly artistic in nature, the Court recognizes that Chosen Figure exercised some measure of

20   technical skill and creative judgment when selecting and capturing the subjects of the Photograph.

21   Therefore, this factor weighs against a finding of fair use.

22                 iii.   Amount and Substantiality of the Portion Used

23   The third factor is the "amount and substantiality of the portion used in relation to the

24   copyrighted work as a whole." 17 U.S.C. § 107(3). "While wholesale copying does not preclude fair

25   use per se, copying an entire work militates against a finding of fair use." *Kelly*, 336 F.3d at 820.

"However, the extent of permissible copying varies with the purpose and character of the use. If the secondary user only copies as much as necessary for [its] intended use, then the factor will not weight against [it]." *Id.* at 820–21. Alternatively, "[c]opying even a small portion of a copyrighted work may exceed the boundaries of fair use if the material taken is the 'heart' of the work." *Los Angeles News Service v. Tullo*, 973 F.2d 791, 798 (1992).

Here, KFP concedes that it reproduced the entire Photograph when it reproduced Lil Uzi Vert's Story—which includes a wholesale reproduction of the image. Mot. at 11.

Given that KFP has acknowledged wholesale copying of the original work albeit through a screenshot of Lil Uzi Vert's Instagram story, the Court finds this factor weighs against a finding of fair use.

iv.   Effect of Use on the Potential Market

The final factor requires the Court to consider the "effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Evaluation of this factor considers "not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in . . . would result in a substantially adverse impact for the market of the original." *Campbell*, 510 U.S. at 590 (internal quotation marks omitted). The Supreme Court has declared that this factor is "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S at 567.

KFP argues there is "little risk that a licensee would select Hip Hollywood's use of Lil Uzi Vert's Instagram Stories post [in] lieu of licensing Chosen Figure's work" because the Photograph is part of Lil Uzi Vert's post which includes his textual comment and visual indicators that the post was made to Instagram. Mot. at 12. The Court finds this argument unavailing.

This is a mixed question of law and fact. Based on the arguments presented, there is no basis for this Court to determine, as KFP urges, that the Article has no impact on the market. To the extent that Chosen Figure does license to other "gossip" publications, *see* Opp'n at 2, the free publication of a largely unaltered photo of a major topic of celebrity gossip might harm the market for Chosen Figure's work. Therefore, the Court finds this factor also weighs against finding fair use.

In sum, after considering all four factors, the Court finds that KFP has failed to meet its burden to show fair use. Accordingly, the Motion to Dismiss is DENIED.

**<u>CONCLUSION</u>**

For the reasons stated above, the Court GRANTS KFP'S Request for Judicial Notice and DENIES KFP's Motion to Dismiss. The Court ORDERS as follows:

    1)  The Court GRANTS KFP's Request for Judicial Notice of Exhibits 1–2;

    2)   The Court DENIES the Motion to Dismiss.

IT IS SO ORDERED.

Dated:  July 19, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge